I see Mr. Forbes and Mr. Hensley so you may proceed Mr. Forbes thank you your honor may it may please the court my name is Randall Forbes I represent the disability claimant in this appeal with me in the room is a new attorney to our  I'm here to speak on behalf of the district attorney's office as you know the as all of you are familiar the standard of review is a substantial evidence standard it's substantial evidence supports the commissioner's decision and it should be reversed and remanded in this case where we are arguing that the decision must be logically coherent and be capable of being meaningfully reviewed if it is not or if the evidence doesn't support the decision it should be reversed and remanded in this case where we are arguing that a specialist opinion should have been given controlling weight under this is under regulation 1527 as it existed at the time of the filing of this application if you find that our argument is correct and that work preclusive limitations should govern then the proper disposition would be an award of benefits mr. Forbes I presume you're referring to dr. Kamenati's statement that your client cannot sit stand or walk for any sustained period of time that that is correct your honor is it clear that that was a medical opinion or just a clinical statement based on what was going on during the examination well it's clear and in this sense the ALJ thought it was an opinion because the ALJ analyzed it as such take that out of it right now I'd like to know what the actual medical groups okay drop my paper the medical records you read a lot of these medical records right how is it best understood holistically the definition of medical opinion is found at 1527 a1 and it says statements from acceptable medical sources that reflect judgments about the nature and severity of your impairments including your symptoms diagnosis prognosis and what you can do despite impairments what I would suggest especially in this particular medical report record is that the identification of the sit stand and walk problems is a is a statement about symptoms it's also a statement about function notice and and I said I say this just a little bit and just but it's a good it illustrates your point notice there are no facts in in the what we would normally call the patient history section there are no facts that have to do with whether she likes root beer floats and the reason is is they're totally not relevant but what is relevant to where the treating specialist is going in this record is whether or not the pain and functional problems follow the the medical understandings of what matches up with the MRI and what can be and what can be fixed by the surgery and if I could maybe focus this a little bit more because it seems to me this is the crux of the case it's clear that this statement is not phrased in the form of a restriction as we typically see in these cases when doctors say that you know my my patient is restricted in the following ways XYZ that that's not how this statement as far as where it appears and how it appears and how it's phrased in the medical record recitation of what the doctor is receiving as a matter of reporting from the patient or is it a statement of what he is seeing as a result of his clinical examination of the patient because the clinical measures don't support this because the clinical measures would also be the the MRI I think the MRI does support that is that what Dr. Cavanaugh found based on his MRI what he's he he arrives at the conclusion that she should continue pain management therapy or have a rather extensive surgery and the and he goes here's here's I guess here's another way of phrasing the point if she had no problems walking sitting or standing and and no pain that that corresponded with the problem at that spinal level and where it would radiate he would say that and then he'd note the MRI had that said what it said but he probably wouldn't the idea of going to surgery would not have been a factor you don't go to a different way Dr. kind of body's letter it seems came on the 13th or 14th of November the hearing as you know was on November 30th right what is in the administrative record that was submitted before the hearing or by way of supplementation that shows Miss Carr had experienced a downturn in her ability to stand walk or sit in approximate 15 increments with problems at that that's at the administrative record number 95 and 96 I believe she had a long history    She had a long history of chronic back pain. She had an MRI in 2012 which showed this problem in the lower vertebrae. So that sounds all kind of general to me. You know there was one period there where she helped a family member load a U-Haul and she was experiencing quite a bit of lower back pain after that. Was there any fall or injury or anything that caused this flare up that you can point us to in the record at the end of 17 I'm not positive that there is I would have I would have to go back and look at my statement of the fact I will let you know your honor that I did not do that the administrative hearing in this particular case the reason one of the reasons I'm asking that is because in your blue brief at page 25 you suggest well hey maybe maybe there's a onset date shouldn't be an early 16 it should be at the end of 17 and for you to suggest that it maybe I'm mistaken it seems to me that maybe you had something in mind that you know she took a bad fall or was somehow hurt and that led to what we see documented in that letter I believe I was just throwing in an alternative argument to show that assuming there was no downturn whatsoever the the medical evidence as of Dr. kind of audit report when when he had the benefit of the MRI was at a level that was disabled I'm not sure so that's just that's just a fallback argument the when you come when you look at the report combined with their testimony combined with the rest of the objective history it is not it's it's not out of the ballpark to suggest that it had been that way since she stopped working on her or around her onset date that's about the best answer I could give you just a scatter at this point all right thank you your time has expired thank you thank you may it please the court I'm Jay Hines Lee representing the basic question before the court can you see on your screen how you would appear to us is it fuzzy yes it looks like there's a coating of oil on the lens yeah is that any better no the lens needs to be cleaned okay whatever you're cleaning it isn't the lens yeah I apologize that's a little it's right you know this is something you should do before your time begins an oral argument I understand your honor is this any better yeah okay thank you your honor is the basic question before the court is whether the evidence in this case compels a contrary conclusion to that of the administrative law judge in other words is Miss Carr correct in arguing that dr. kind about his letter to dr. Hess leads a reasonable fact finder to conclude that Miss Carr was disabled the administrative law judge reviewed dr. kind of at a statement that Miss Carr was unable to sit stand or walk for any sustained period of time and reasonably found it extreme in light of the normal findings on examination Miss Carr is unable to demonstrate that no reasonable fact finder could have reached this conclusion in fact as the administrative law judge noted the evidence as a whole supported her residual functional capacity assessment for a reduced range of sedentary work referring to mr. Forbes argument just briefly where he kind of have hardly mentioned the root bear float I'm gonna go on that as well Miss Carr didn't complain about root bear floats she complained about it to she complained to dr. kind of adi about an inability to sit stand or walk problems with her sleeping and other subjective complaints and these were reiterated by dr. kind of adi in the letter supported by treatment notes Miss Carr's activities of daily living function reports and state agency opinions the LJ's residual functional capacity assessment was supported by substantial evidence mr. Hensley do you know of anything in the record that goes to the question I was asking mr. Forbes earlier about some event that caused a meaningful downturn for Miss Carr an injury a fall etc I'm not aware of I'm not aware of any your honor the only thing that was significant towards the end of the record of course was the surgery which occurred after the after the hearing and before just shortly before the LJ's decision the difficulty with presuming in a later onset date and I mentioned this in my brief is that the the surgery which was January 17 of 2018 it occurred less than four months before the LJ's decision accordingly Miss Carr is unable to establish that she would have even met the threshold 12 month duration requirement and in fact the evidence does show that less than one month after the surgery Miss Carr demonstrated minimal point tenderness in the lumbosacral region with good and equal strength throughout her lower extremities and she walked with a quote strong and steady gait also significant Judge Scudder is that just a few weeks after the surgery Miss Carr received a 30 pound weight restriction for the following three months and this is actually three times the maximum amount that the LJ ultimately found that Miss Carr could lift and carry so there are big problems with a later onset the objective tests repeatedly demonstrated normal findings also supportive of the LJ's assessment was Dr. Hess's observation just a few months before Dr. Canavati's letter that Miss Carr had a quote wide very wide variability in her function compared to her written statements and then finally as was alluded to a bit I believe by Judge Sykes Miss Carr's activities of daily living also refuted an inability to sit stand or walk again for any sustained period of time there was evidence that in August of 2017 Miss Carr visited with her son and had played pool with him she actively participated throughout 2017 in substance abuse group therapy as well as individual therapy for anxiety and there was evidence that she got together with family at a restaurant on at least two occasions again this just flies in the face of an inability to sit stand or walk for any sustained period of time Mr. Hensley what about the argument though that you know something's going on here for Dr. Canavati to put on the table an option of spinal fusion surgery so you know you can join issue with the sentence and I think you know it's very unclear if the sentence is just recording her own description of what she was experiencing or if it reflects the finding but the bottom line is that spinal fusion surgery was one of the options so something's going on right absolutely and the ALJ found the back impairment to be a severe impairment and if you take a look at the residual functional capacity it's restrictive I mean the the administrative law judge limited her to sedentary work never climbing ladders ropes or scaffolds occasionally climbing ramps and stairs balance stoop kneel crouch and crawl so it was question I have really at the because of the timing of the opinion vis-a-vis the surgery that the spinal fusion surgery had went forward right but we don't it a logical question to me is spinal fusion surgery sounds like a big deal not a little deal you know can she work after the surgery has anything materially changed and that's that's a I don't think it is because the evidence that the ALJ had in front of her it didn't show any increase in limitations so your point is that she bears the burden throughout if there was such a limitation she should have put it in front of the ALJ yes again miss car has the burden of demonstrating that substantial evidence does not support the LJ's decision this has been repeatedly stated to be more than a scintilla of evidence but less than a preponderance it the evidence has to compel a different conclusion and miss miss car is relying I would emphasize on not only a single page out of the record but one sentence one sentence in a single page out of nearly a thousand pages in an evidentiary record to try to refute the ALJ's well-reasoned analysis she offers no argument that the overall evidence of record supports such an extreme limitation or even any greater limitation than that adopted by the administrative law judge so for that reason we we would maintain that the court all right thank you very much mr. Forbes you have used all your time so we'll take the case under advisement